1       UNITED STATES DISTRICT COURT
2       DISTRICT OF PUERTO RICO

3    FÉLIX RUBÉN NEGRÓN-COLÓN, et al.,

4         Plaintiffs,

                                        Civil No.  08-1078 (JAF)
5         v.

6    HOSPITAL EPISCOPAL SAN LUCAS,
7    et al.,
8
9         Defendants.

10                         **OPINION AND ORDER**

11       Plaintiffs, Félix Rubén Negrón-Colón, Evelyn Collazo-González, their conjugal

12   partnership, and their three children,  Félix R., Evelyn, and Linnette Negrón-Collazo, bring this

13   action against Defendants, Hospital Episcopal San Lucas ("HESL"); Dr. Luis Hernández-Ortiz,

14   Luz E. Cruz-Torres, and their conjugal partnership; Seguros Triple S, Inc.; Puerto Rico

15   Emergency Group; Caribbean Emergency Group; and various unknown parties, alleging

16   violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C.

17   § 1395dd, and personal injury claims under Puerto Rico law, 31 L.P.R.A. § 5141 (1993).

18   (Docket No. 33.) Defendant HESL moves for summary judgment.  (Docket No. 56.) Plaintiffs

19   oppose (Docket No. 62), and HESL replies (Docket No. 67).  Plaintiffs surreply.  (Docket

20   No. 68.)  Defendant Dr. Hernández-Ortiz moves to dismiss supplemental claims against him.

21   (Docket No. 64.)

Civil No. 08-1078 (JAF)                                                                          -2-

1                                              **I.**

2                          **Factual and Procedural Summary**

3           We derive the following facts from the parties' motions, statements of uncontested

4    material facts, and exhibits.  (Docket Nos. 56; 57; 62; 63; 67; 68.)

5           At 5:45 p.m. on January 20, 2007, Félix Rubén Negrón-Colón arrived at the emergency

6    room of HESL in Ponce, Puerto Rico, suffering from a week-long headache.  Shortly after

7    Negrón-Colón's arrival, nurse triage established that he had a blood pressure of 204/97.  At

8    6:05 p.m., he was evaluated by Dr. Hernández-Ortiz, and a CT scan was ordered, with a

9    negative result.  At this time, his blood pressure was listed again as 204/97.  Dr. Hernández-

10   Ortiz made a preliminary diagnosis of headache and high blood pressure.  He prescribed

11   medication and a reevaluation of blood pressure.  At 9:00 p.m., Negrón-Colón's blood pressure

12   was measured at 223/94.  Dr. Hernández-Ortiz prescribed additional medication.  Sometime

13   between 11 and 11:20 p.m., Negrón-Colón's blood pressure was measured for a third time and

14   recorded as 190/85.  He was then discharged.

15          On the following night, Negrón-Colón returned to HESL's emergency room and was

16   diagnosed with a hypertensive crisis and admitted into the intensive care unit by Dr. María

17   Valentín. Negrón-Colón was eventually diagnosed with oculomotoral paralysis.

18          Plaintiffs filed suit in January 2008, alleging that the care Negrón-Colón received from

19   HESL on January 20, 2007, violated EMTALA and Puerto Rico law.  (Docket No. 1.)  An

20   amended complaint followed.  (Docket No. 33.)  On March 2 and 6, 2009, HESL deposed

Civil No. 08-1078 (JAF)                                                                -3-

1      Plaintiffs' expert witness, Dr. Edwin Miranda-Aponte. In his deposition, Dr. Miranda-Aponte

2      agreed with HESL's definition of "hypertensive crisis" as requiring a blood pressure greater

3      than 220/120 and "usually diastolic over 140." (Docket No. 57-4 at 15, 18.)  After reviewing

4      the three blood pressure readings listed in Negrón-Colón's patient record for January 20, 2007,

5      Dr. Miranda-Aponte agreed with HESL's assertion that Negrón-Colón did not suffer from an

6      emergency medical condition on that night. (Id. at 27–28.)

7              This assessment was supported by Dr. María Valentín's deposition.  Addressing the

8      "neurological deficit" experienced by Negrón-Colón on January 21, Dr. Valentín agreed that

9      this deficit was a "change in the clinical picture that the patient had the previous day" and

10     "manifested itself after discharge and while the patient was at his house during January 21st."

11     (Docket No. 67-7 at 6.)

12             Plaintiffs' deposition testimony regarding Negrón-Colón's blood pressure on the night

13     of January 20 does not contradict HESL's patient record.  Negrón-Colón stated that his blood

14     pressure was taken three times that night, with a final reading of 190/85 at 11:20 p.m.  (Docket

15     No. 67-8 at 3.)  The deposition of his son, Félix Negrón-Collazo, corroborates this sequence:

16     "[W]hen I left they had taken his blood pressure again around 9:30, 10:00 or 11:00.  I really

17     don't remember the time very well, but it had come down from two hundred and twenty

18     something to 190 by then."  (Docket No. 67-9 at 2.)  Furthermore, the deposition of his

19     daughter, Evelyn Negrón-Collazo, states that the last blood pressure reading taken was 190.

20     (Docket No. 67-10 at 2.)

Civil No. 08-1078 (JAF)                                                                                    -4-

1       HESL sent an e-mail to Plaintiffs on May 6, 2009, transmitting a transcript of

2       Dr. Miranda-Aponte's deposition, as had been stipulated prior to the deposition.  HESL moved

3       for summary judgment on September 17, 2009 (Docket No. 56), and Plaintiffs opposed (Docket

4       No. 62).  HESL replied to Plaintiffs' opposition (Docket No. 67), and Plaintiffs surreplied

5       (Docket No. 68).  Dr. Hernández-Ortiz filed a separate motion to dismiss the supplemental

6       claims against him.  (Docket No. 64.)

7                                                              **II.**

8                                    **Summary Judgment Under Rule 56(c)**

9              We grant a motion for summary judgment "if the pleadings, the discovery and disclosure

10      materials on file, and any affidavits show that there is no genuine issue as to any material fact

11      and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual

12      dispute is "genuine" if it could be resolved in favor of either party and "material" if it potentially

13      affects the outcome of the case.  Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir.

14      2004).

15             The movant carries the burden of establishing that there is no genuine issue as to any

16      material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The movant does not need

17      to produce evidence to prove the absence of a genuine issue of material fact but may instead

18      point to a lack of evidence supporting the nonmovant's case.  Id.  In evaluating a motion for

19      summary judgment, we must view the record in the light most favorable to the nonmovant, and

20      we must consider the entire record of admissible evidence.  See Reeves v. Sanderson Plumbing

Civil No. 08-1078 (JAF)                                                                    -5-

1    Prods., 530 U.S. 133, 150–51 (2000).  "Once the moving party has made a preliminary showing

2    that no genuine issue of material fact exists, the nonmovant must produce specific facts, in

3    suitable evidentiary form, to establish the presence of a trialworthy issue."  Clifford v. Barnhart,

4    449 F.3d 276, 280 (1st Cir. 2006) (internal quotation marks omitted).  The nonmovant "may not

5    rely merely on allegations or denials in its own pleading; rather, its response must . . . set out

6    specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

7                                                         **III.**

8                                                     **Analysis**

9    **A.      EMTALA**

10       Plaintiffs allege that HESL violated EMTALA by providing an inadequate medical

11   screening and failing to stabilize Negrón-Colón before discharging him.

12       EMTALA requires hospital emergency rooms to conduct an "appropriate medical

13   screening examination . . . to determine whether or not an emergency medical condition . . .

14   exists." 42 U.S.C. § 1395dd(a).  An "appropriate medical screening" under § 1395dd(a) is one

15   "reasonably calculated to identify critical medical conditions that may be afflicting symptomatic

16   patients and provides that level of screening uniformly."  Correa v. Hosp. San Francisco, 69

17   F.3d 1184, 1192 (1st Cir. 1995).  EMTALA, however, is not a cause of action for medical

18   malpractice.  Id.  While either a refusal to screen or a policy that results in a disparate screening

19   violates EMTALA, a flawed medical screening, standing alone, does not.  See id. at 1192–93.

Civil No. 08-1078 (JAF)                                                                                          -6-

1        If a patient is found to have an emergency medical condition, a hospital must stabilize

2    the condition prior to transfer, subject to certain exceptions.  § 1395dd(b)–(c).  An "emergency

3    medical condition" is one that "manifest[s] itself by acute symptoms of sufficient severity . . .

4    such that the absence of immediate medical attention could reasonably be expected to result

5    in—(i) placing the health of the individual . . . in serious jeopardy, (ii) serious impairment to

6    bodily functions, or (iii) serious dysfunction of any bodily organ or part." § 1395dd(e)(1)(A).

7        **1.      Adequate Screening**

8        Plaintiffs' complaint broadly alleged that the medical screening provided by HESL was

9    inadequate. (Docket No. 33.)  HESL has argued that there is no evidence of disparate treatment

10   or a refusal to treat.  (Docket No. 56 at 10–11.)  Plaintiffs failed to respond with any evidence

11   demonstrating that HESL refused to follow established screening procedures or applied those

12   procedures disparately.  We, therefore, find no genuine issue of material fact as to whether

13   Negrón-Colón received an appropriate medical screening within the meaning of § 1395dd(a).

14   See Correa, 69 F.3d at 1192.

15       **2.      Emergency Medical Condition**

16       Plaintiffs allege that Negrón-Colón's emergency medical condition was not properly

17   stabilized before his discharge on January 20, 2007.  (Docket No. 33.)  HESL presents evidence

18   that Negrón-Colón did not exhibit an emergency medical condition, much less a condition that

19   HESL failed to stabilize.  (Docket No. 56.)  HESL relies, in part, on Negrón-Colón's hospital

20   record and the  testimony of Plaintiffs' expert witness, Dr. Miranda-Aponte, for the proposition

1    that Negrón-Colón's blood pressure never reached the point of "hypertensive crisis" before his

2    discharge on January 20.  Thus, HESL argues, Negrón-Colón's condition was not an emergency

3    medical condition under § 1395dd(e)(1)(A).  (Docket No. 56 at 11–12.)

4        In opposition, Plaintiffs argue that HESL's evidence for the lack of an emergency

5    medical condition is inadmissible and, therefore, the existence of such a condition remains a

6    triable issue.  Plaintiffs claim HESL's evidence is inadmissible because: (1) the medical record

7    appended to HESL's motion for summary judgment was possibly tampered with; and (2) the

8    deposition transcript of Plaintiffs' expert, Dr. Miranda-Aponte, was not sent to the expert for

9    his review, as stipulated prior to the deposition, and Plaintiffs were denied an opportunity to

10   cross-examine him. (Docket No. 63.)

11       For the reasons stated below, we find neither of Plaintiffs' arguments meritorious.  In

12   light of the evidence before us, we find no genuine issue of material fact as to whether Negrón-

13   Colón suffered an emergency medical condition on January 20, 2007, and, therefore, HESL is

14   entitled to summary judgment as to Plaintiffs' EMTALA claim.

15                          **a.      Spoliation of the Medical Record**

16       Plaintiffs first call into question the accuracy of the medical record HESL relies on in its

17   summary-judgment motion (Docket No. 57-2), when compared to the copy of the medical

18   record initially provided to Plaintiffs (Docket No. 62-2).  The records differ in two ways.  First,

19   page two of HESL's patient record contains additional writing under the "Consulted Physician"

20   heading.  Under this heading, both Plaintiffs' and HESL's respective copies contain a blood

Civil No. 08-1078 (JAF)                                                                                    -8-

1      pressure measurement of 190/85.  (Docket Nos. 57-2 at 4; 62-2 at 2.)  HESL's copy, however,

2      contains additional notations next to this measurement providing a time, appearing to be either

3      "1100 pm" or "1120 pm," and an illegible scribble.  (Docket No. 57-2 at 4.)  Also, HESL's copy

4      includes a page, missing from Plaintiffs' copy, titled "Physician's Progress Notes," containing

5      what seem to be Dr. Hernández-Ortiz' handwritten notes.  (Docket No. 57-2 at 6.)  Plaintiffs

6      claim that this  "substantial suspicious discrepancy" between the two medical records indicates

7      a spoliation of the record submitted by HESL.  (Docket No. 62 at 3–4.)

8              While Plaintiffs have raised a suspicion of spoliation, this is not a genuine issue of

9      material fact.  Even if we were to disregard the suspect portions of the medical record as having

10     been tampered with, additional evidence in the record before us independently supports the

11     proposition that Negrón-Colón was not suffering from a medical emergency on January 20.

12     Specifically, Plaintiffs' own deposition testimony establishes Negrón-Colón's blood pressure

13     readings on January 20 with a third and final reading of 190/85.  (See Docket Nos. 67-8; -9; -

14     10.)

15                     **b.       Expert Deposition**

16             Plaintiffs next challenge the admissibility of their expert witness' deposition on two

17     grounds:  (1) HESL's alleged failure to send Dr. Miranda-Aponte a transcript of his deposition;

18     and (2) the denial of an opportunity to cross examine Dr. Miranda-Aponte.  (Docket No. 62.)

19     Plaintiffs, however, have waived their right to object to the admissibility of this deposition on

20     either ground.

Civil No. 08-1078 (JAF)                                                                                      -9-

1        Federal Rule of Civil Procedure 30(e) states that, when requested, a deponent must be

2   allowed thirty days to review his deposition transcript and sign a statement listing any changes

3   to his testimony and the reasons for them.  A deponent's signature on the deposition is required

4   only where review was requested and changes were made.  See Fed. R. Civ. P. 30 advisory

5   committee's note to 1993 amendments.  Objections to the transmittal of a transcript are waived

6   "unless a motion to suppress is made promptly after the error or irregularity becomes known or,

7   with reasonable diligence, could have been known."  Fed. R. Civ. P. 32(d)(4).

8        HESL completed its deposition of Dr. Miranda-Aponte on March 6, 2009.  HESL did

9   not move for summary judgment until September 17, 2009.  If the transcript had not been

10  transmitted to Plaintiffs,[1] reasonable diligence surely would have uncovered this irregularity

11  within six months.  Thus, any objection on this ground by Plaintiffs is waived under Rule

12  32(d)(4).

13       Plaintiffs next argue that they did not have an opportunity to cross-examine Dr. Miranda-

14  Aponte, and that it is improper for us to consider his deposition.  (Docket No. 62 at 2.)  HESL

15  contends that the deposition was cut short because Plaintiffs insisted they had run out of time,

16  and it notes that Plaintiffs had ample time to schedule another deposition of their witness or to

17  have him produce an amended report.  (Docket No. 67 at 2–3.)

---

[1] HESL's submissions demonstrate that its attorney e-mailed Plaintiffs' attorney on May 6, 2009, attaching a copy of the transcript of Dr. Miranda-Aponte's deposition.  (Docket No. 67-6.)  Plaintiffs have not challenged the authenticity of HESL's e-mail.  If Dr. Miranda-Aponte was unable to review the transcript of his deposition, it seems the fault lies with Plaintiffs' attorney.

Civil No. 08-1078 (JAF)                                                      -10-

1          Federal Rule of Civil Procedure 32(d)(3)(B) provides that objections to errors or

2    irregularities relating to "the manner of taking the deposition . . . or other matters that might

3    have been corrected at that time" are waived if not made during the deposition itself.

4          Assuming that there is a right to cross-examination in pretrial depositions,[2] we find that

5    Plaintiffs have waived any objection based on such a right. Reviewing the full text of

6    Dr. Mirada-Aponte's deposition (see Docket Nos. 67-2; -3; -4; -5), we find no objection by

7    Plaintiffs to a deprivation of their right to cross-examine the witness.  By failing to object during

8    the deposition, Plaintiffs have waived any potential objection for lack of cross-examination.

9    See Fed. R. Civ. P. 32(d)(3)(B).

10         Plaintiffs raise no other objections to the substance or form of Dr. Miranda-Aponte's

11   deposition, nor do they present evidence to contradict his determination that Negrón-Colón did

12   not suffer from an emergency medical condition on January 20, 2007.

13   **B.     Supplemental Claims**

14         Plaintiffs allege supplemental claims under Puerto Rico tort law against all Defendants.

15   (Docket No. 33.)  As we dismiss Plaintiffs' only federal claim, we decline to consider their

16   supplemental claims.  See 28 U.S.C. § 1367(c)(3); González-De-Blasini v. Family Dept., 377

17   F.3d 81, 89 (1st Cir. 2004) (stating that a "district court may decline to exercise supplemental

---

[2] It is unclear whether a right to cross-examination exists at pretrial deposition.  We need not decide this question, however, as we resolve the present dispute on other grounds.

Civil No. 08-1078 (JAF)                                                                          -11-

1    jurisdiction" if "the district court has dismissed all claims under which it has original

2    jurisdiction").

3                                                    **IV.**

4                                               <u>**Conclusion**</u>

5            For the reasons stated above, we hereby **GRANT** both HESL's summary-judgment

6    motion (Docket No. 56) and Dr. Hernández-Ortiz' motion to dismiss supplemental claims

7    (Docket No. 64).  We **DISMISS** Plaintiffs' complaint (Docket No. 33) in its entirety as to all

8    Defendants.

9            **IT IS SO ORDERED.**

10           San Juan, Puerto Rico, this 30th day of August, 2010.

11                                                            s/José Antonio Fusté
12                                                            JOSE ANTONIO FUSTE
13                                                            Chief U.S. District Judge